## FEDERAL LIFE INS. CO. v. WRIGHT.
### (No. 8397.)

(Court of Civil Appeals of Texas. Dallas. Jan. 22, 1921. On Appellant's Motion for Rehearing, April 9, 1921. Appellee's Motion for Rehearing Denied May 14, 1921.)

On Appellant's Motion for Rehearing.

1. Insurance ⚖=136(4)—Policy never became obligation of insurer on account of insured's affliction with disease.

Where a life policy provided it should not take effect as a contract of insurance unless actually delivered to the applicant therefor while he·was in good health, plaintur beneficiary, suing after insured's death, having admitted in her pleadings and in open court at the trial that insured was afflicted with tuberculosis of the lungs when the policy was delivered to him, and that such disease caused his death, the policy by its terms never became an obligation of the insurer, and the beneficiary can re-cover only the amount of premiums paid, de-spite the failure of the insurer, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 4948, in case of misrepresentations, to give no-tice to the insured or the beneficiary, within a reasonable time after discovery that insured had tuberculosis of the lungs, that it would not be bound by the policy.

On Appellee's Motion for Rehearing.

2. Insurance ⚖=136(4)—Provision policy shall not take effect unless insured in good health not prohibited by statute.

The provision of a life policy that it shall not take effect unless insured is in good health at the time of issuance is not prohibited by Rev. St. 1911, art. 4742, subd. 3, invalidating any provision for settlement for less than the amount insured on the face of the policy.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Mrs. E. Leo Wright against the Federal. Life Insurance Company. From judgment for plaintiff, defendant appeals. Judgment reversed, and judgment rendered in favor of plaintiff for a limited sum.

Cockrell, Gray, McBride & O'Donnell, and Henry P. Edwards, all of Dallas, for appellant.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellee.

TALBOT, J. The appellee, Mrs. E. Leo Wright, instituted this suit October 9, 1915, against the appellant, as beneficiary under a policy of insurance issued by the appellant on the life of her husband, Robert William Wright. The appellee's husband died on July 8, 1916, from consumption or tuberculosis of the lungs. The appellant, in answer to plaintiff's petition, denied any liability under said policy on the ground that such policy never became effective as a contract of insurance, for the reason that Robert Wright was afflicted with said disease at the time the policy was delivered to him and was not therefore in good health at that time; that the application signed by Wright for the pol· icy of insurance, and which by its terms was a part of such policy, provided that the policy should not take effect until actually delivered to the assured, Wright, and the first premium actually paid during his life and while he was in good health. It was further alleged that the said assured, Wright, had made false statements and misrepresentations material to the risk in his application for insurance, he having stated therein that he did not have any ailment, disease, or disorder; that he had never had consumption; that he had never had any serious illness; that he had never sought or been advised to seek a change of .climate or occupation for his health; that the physician whom he had consulted and by whom he had been prescribed for and treated within the five years preceding the making of the application was Dr. Gray, and that he had consulted him the preceding week for cold in the head, which answers were each and all untrue, in that at the time of making said application, he was afflicted with con-sumption or tuberculosis of the lungs, which fact he knew; had been advised to seek a change of occupation for his health, within a few months prior to the making of said appli-cation; and had, within a few months prior to the making of said application, consulted and been treated by Dr. E. H. Gray, of San Antonio, Tex., on several occasions, and had been treated during said time by said physi-cian for tuberculosis or consumption.

Appellant also pleaded that, within 90 days after it discovered the falsity of the repre-sentations so made, it notified in writing Mrs. E. Leo Wright, the beneficiary under said policy, that on account of said misrepresen-tations it refused to be bound by the contract or policy of insurance. Thereafter it tender-ed back the annual premium paid on the poli-cy, together with interest from the date of payment, and, such tender being refused, a deposit covering same was placed in the reg-istry of the court. The appellee, in her sup-plemental petition, admitted that the assur-ed, Wright, had consumption at the time he signed the application for insurance, but denied that he had knowledge of such fact, and denied that the answers made by him were fraudulently made. At the conclusion of the evidence, the appellant requested the court to direct the jury to return a verdict for the plaintiff for the amount deposited by the defendant in the registry of the court, and in all other respects for the defendant. This was refused, and the court submitted issues calling for findings as to whether the assured knew he had consumption or tuber-culosis of the lungs when he signed the appli-cation for insurance, and as to whether the answers to certain of the other questions

contained in the application were made willfully with intent to deceive the insurance company. These questions were answered by the jury in the negative, and the court entered judgment for the plaintiff for the amount of the policy with interest, statutory penalty, and $500 attorney's fees. From this judgment the appellant duly perfected an appeal to this court.

The first and second assignments of error complain of the action of the court in refusing to give appellant's requested instructions directing the jury to return a verdict in favor of the appellee, Mrs. E. Leo Wright, for the sum of $50.42, being the amount deposited by the appellant in the registry of the court, and in all other respects for the appellant. There are two propositions advanced under these assignments, which are, in effect, that where it is provided in the application for a policy of life insurance that the policy shall not take effect until it shall have been actually delivered to the insured and the first premium paid during his life and while in good health, and the uncontradicted evidence introduced in a suit on the policy shows that the applicant had tuberculosis of the lungs or consumption at the time he signed such application and at the time the policy was delivered, and that he had been informed by his physician that he had such disease, and such fact is admitted by the plaintiff, and the uncontradicted evidence further shows that his death, which occurred nine months after the issuance of the policy, was caused by tuberculosis of the lungs, and that the insurance company, within 60 days after learning that the insured had tuberculosis of the lungs at the time the policy was issued, notified the beneficiary in writing that it refused to be bound by said policy of insurance, such insurance company is not liable on the policy so issued and the court should instruct a verdict for the defendants. In reply to the assignments and propositions of the appellant, the appellee contends that the issues of fact in the case, which the jury found in her favor are that her husband did not know that he had tuberculosis, and that his answers were not made willfully and with the intent to deceive the appellant, and that the appellant did not, within a reasonable time after discovering the falsity of the misrepresentations, give notice to the assured that it refused to be bound by the contract of insurance. The first proposition asserted is:

"The burden was upon the insurance company to prove that, within a reasonable time after learning that the assured had tuberculosis of the lungs at the time the policy was delivered, it gave the assured notice that it refused to be bound by the policy. It was a question of fact whether such proof was so made."

There is no question but that this proposition of the appellee contains a substantially correct statement of the law upon the subject to which it relates, and if the burden therein referred to has not been discharged, the judgment of the district court must be affirmed, regardless of the other questions presented in the appellant's brief. Article 4948 of Vernon's Sayles' Texas Civil Statutes, which was passed in 1903, declares that—

"In all suits brought upon insurance contracts or policies hereafter issued or contracted for in this state, no defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid, unless the defendant shall show on the trial that, within a reasonable time after discovering the falsity of the misrepresentations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, that it refused to be bound by the contract or policy; provided, that ninety days shall be a reasonable time."

The appellant seems to have fully appreciated the burden resting upon it to give notice within the time required by the statute quoted that it refused to be bound by the policy, and that proof of that fact was essential to defeat the appellee's right to recover, but contends that it clearly and indisputably appears from the evidence that such notice was given. In this view of the evidence we are not prepared to concur. The appellant, in support of its contention, introduced the depositions of Dr. Jenney, its medical examiner, Isaac Hamilton, its president, Chas. Rannels, its secretary, all of Chicago, Ill., and the deposition of its actuary and assistant secretary, then in the army, in which each of them testified that the first time he learned that the assured had been afflicted with tuberculosis was when the company received the proof of his death about August 10, 1916. The appellant's Texas manager, Mr. Ben Thorpe, also testified to the same effect. The application of the assured for the policy in question contained the following:

"I have paid Mr. J. Smith $10.02 cash, notes for $11.50 due on December 27, 1915; March 27, 1916, June 27, 1916, premium on the policy for ——, on the condition that if the risk is not assumed by the company the same is to be returned with the provisions of conditional receipt No. ——, which I have accepted subject to the provisions thereof."

"This risk is approved and recommended by J. Smith, agent, signature of person or persons actually soliciting and securing application."

Appellant's manager in Texas further testified:

"I had that connection (manager) with the company at the time the application of Robert William Wright was made to the company and at the time the policy sued on in this case was issued. The application for insurance policies in Texas goes through my office. This policy involved in this suit went through my office. * * * I knew Smith, who took the application of Mr. Wright. That is the only life insurance application he ever took; he was in the accident and health department of our com-

pany. I do not know where he is now. The last I heard of him was just about the time of Mr. Wright's death. All of the premiums on Texas policies are paid through my office here in the Praetorian building, Dallas, Tex.; everything is collected here and remitted to the home office afterwards."

The appellee, Mrs. Wright, testified:

"The first time I saw that man Smith, he come up on the porch one day and asked for Rob. Smith did not talk to me before he talked to my husband; he only made one remark to me at all. I cannot remember his exact words, but the substance of it was this: 'Don't be worried or don't be frightened;' I don't know which he used; 'I haven't come about Mr. Wright's insurance.' That is what he said. I did not talk with him before the application was made. I had never seen the man before, to my certain knowledge, and I don't remember ever having seen him after that one time."

Also on cross-examination she said:

"I don't remember to have seen Mr. Smith after the death of my husband. I can state positively that after my husband died I did not go to Smith and pay the remainder of the premium due on the insurance. I don't remember to have seen Mr. Smith except on one occasion."

The agent Smith, who solicited the insurance and prepared and received the application and cash premium therefor, did not testify, and there is no evidence in the record accounting for the absence of his testimony, except that contained in the testimony of the witness Thorpe to the effect that he did not know where Smith is now, and that the last he heard of him was about the time of the assured's death. Neither is there any testimony concerning Smith's authority, or want of authority, to act for the appellant in receiving notice, etc. If, therefore, Smith had knowledge of the condition of the assured's health more than 90 days prior to the time appellant wrote to the appellee that it was not liable on the policy on account of the misrepresentations in the application therefor, was such knowledge imputable to the appellant? The elementary authorities state the general rule to be that when the agent of an insurance company has authority only to solicit and take applications for insurance his knowledge of facts are not imputable to the principal, so as to estop the principal from setting up a breach of warranty expressed upon the face of the policy. It is also a general rule that an insurance company cannot take advantage of conditions in a policy whereby such policy is to be void by reason of circumstances existing at the time the policy issued, in case the facts were known to its agent at the time; and this rule seems to have been recognized universally. In many of the states, including our own, as pointed out by Mr. Joyce in his work on the Law of Insurance, statutes have been enacted which make any person other than the applicant, who solicits, procures, or transmits applications, the agent of the company. Article 4961 of chapter 15, Vernon's Sayles' Texas Civil Statutes, provides that—

"Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, * * * or who shall * * * receive, or collect, or transmit any premium of insurance, * * * or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself * * * shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter."

In Jamison v. State Ins. Co., 85 Iowa, 229, 52 N. W. 185, it is held that the person procuring an application is the company's agent, not only in soliciting insurance, but in drawing up the policy, and that information to him as to the true state of the title bound the company. And under the Wisconsin statute, which is similar to the statute of this state on the subject, it is held that whoever solicits insurance on behalf of any insurance company, or transmits an application to such company or a policy to or from such corporation, or collects or receives any premium for insurance, or in any manner acts or assists in doing either, or in transacting business for such company, must be deemed and held to be an agent of such corporation, to all intents and purposes, in each of the several things mentioned, and the company cannot disclaim his agency in the doing of anything necessarily implied in the specific acts thus authorized. It is further held that in such case knowledge by the agent that the building insured was unoccupied binds the company. Bourgeois v. Mutual Fire Ins. Co., 86 Wis. 402, 57 N. W. 38. Likewise, in another case decided by the Supreme Court of Wisconsin, A., in pursuance of a local custom, by agreement with B., both being insurance agents, placed insurance in two companies represented by B., but not by A. The policies were issued. A. delivered the policies, which were countersigned by B., and collected the premiums, and commissions were divided between A. and B. The assured did not know of the agreement between A. and B., nor that A. was not the agent of the insurers. It was held that A.'s knowledge at the time the application was made as to further insurance bound the company, and that he was an agent of the two companies under the statute of that state. Schomer v. Hekla Fire Ins. Co., 50 Wis. 575, 7 N. W. 544; 1 Joyce on Insurance, §§ 504 and 512.

No effort appears to have been made to as-

certain the whereabouts of appellant's agent Smith and secure his testimony. Doubtless he was in a better position to hear and know of the condition of the assured's health before, at the time of, and subsequent to the delivery of the policy than any other agent representing the appellant. He was with the assured before and at the time the application for the policy was made. He negotiated the transaction, prepared the application, collected the cash premium, and from the testimony of Mrs. Wright it appears that after the application for the insurance was secured, and perhaps after the policy was issued, he called on the assured at his home and had a conversation with him, the nature of which is not disclosed, but from what he, the agent, then said to Mrs. Wright, the inference may be drawn that he was aware of some fact known to Mrs. Wright in connection with her husband's application or policy of insurance, which, if pressed, would invalidate or defeat the issuance, and that such fact was, especially since there is nothing to indicate any other reason why Mrs. Wright should have been worried or frightened because of the agent Smith's visit on account of her husband's insurance at that time, that the assured was afflicted with tuberculosis of the lungs. Mrs. Wright said that the first time she saw Smith he came to her home and asked for her husband; that Mr. Smith did not talk with her before he talked to her husband; that he only said, in substance, "Don't be worried or don't be frightened. I haven't come about Mr. Wright's insurance."

The burden of proof, as before indicated, was upon the appellant to show that the statutory notice of rescission of the contract was given, and we do not believe it can be said, under the facts of the case, that simply because its home officers and its manager in this state testified that neither of them knew that the assured had tuberculosis until proof of the death of the assured was received by the company, the trial court was authorized to assume, as a matter of law, that this burden was discharged. There is an entire absence of proof that Smith, the agent, did not know long prior to the assured's death that he, the assured, was afflicted with tuberculosis and was so afflicted at the time the application for the insurance was made and the policy delivered. The argument of appellant to the effect that to hold that the giving of the notice in question within the required time was not conclusively shown in the case, because lack of knowledge on the part of the agent Smith was not shown, would be, in effect, to declare that it would be necessary for the appellant, in order to prove the giving of such statutory notice within the required time, to show by affirmative testimony that no one of its many agents and employés ever had such knowledge, is not sound. As indicated, the evidence is sufficient to justify

the conclusion that of all of the appellant's agents Smith was in a better position than any of them to know that the assured was afflicted with tuberculosis, and our conclusion is that the failure of the appellant to show lack of his knowledge of that fact and the extent of his authority as its agent not only precluded the court from taking the issue from the jury, but left it as a controverted one for decision. While the cases cited above were suits to recover on fire insurance policies, we think the principle enunciated in them with respect to imputability of the agent's knowledge to the principal is applicable here.

Appellee urges as a further reason why it should be held that the evidence does not conclusively show that the statutory notice in question was given is that all of the witnesses introduced by the appellant and who gave testimony bearing upon the issue were interested parties, being officers and agents of the appellant. In this connection we are inclined to concur. In Railway Co. v. Runnels, 92 Tex. 305, 47 S. W. 971, it was said:

"It is the province of the jury to pass upon the credibility of the witnesses and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, *or his interest in the result of the litigation*, or other things indicating that the evidence is not reliable." (Italics ours.)

And in Brown v. Griffin, 71 Tex. 654, 9 S. W. 546, it was held, in effect, that where there are circumstances in evidence from which the court or jury may discredit the statements of a witness, they may disbelieve and discard his testimony, although the same has not been contradicted by any other witness. If Smith had information of the condition of the assured's health, it must be held, we think, under the facts of the case, that his agency and authority were of such character as that his knowledge is imputable to the appellant. At any rate, in the state of the evidence the court was not authorized to assume that the appellant gave the statutory notice of its refusal to be bound by the policy, or that if Smith had received information, at the time he took the application for the policy, that the assured had tuberculosis, and failed to disclose the fact to the appellant, and thereby perpetrated a fraud upon it, he and the assured were participants in such fraud. These matters were not submitted to the jury, and their submission was not requested by either party. This being true, and there being evidence to authorize such action, the presumption should obtain that the trial court determined each and all of them favorably to the appellee.

Each and all of the appellant's assignments of error relate to and have reference

to the defense pleaded that the appellant was not liable under the policy sued on, because the same never became effective as a contract of insurance, for the reason that the assured was afflicted with tuberculosis of the lungs at the time the policy was delivered to it, and if we are correct in holding that the record sent to this court fails to disclose that the appellant met and discharged the burden resting upon it to show that appellant, within the time required by our statute, gave notice that it would not be bound by said policy on account of such condition of the assured's health, the case cannot be reversed, for any error, if any, pointed out in said assignments. By failing to give such notice the appellant lost any right to defend on the ground of misrepresentations made in the assured's application for or in obtaining the policy as to the condition of his health, and regardless of the error assigned the judgment must be affirmed; and it is accordingly so ordered.

Affirmed.

On Appellant's Motion for Rehearing.

The first ground of the appellant's motion for a rehearing is to the effect that we erred in refusing to consider and sustain its second assignment of error presented in the brief, which is as follows:

"The court erred in refusing to submit to the jury the defendant's request for peremptory instruction No. 2 as follows: It being provided in the application signed by Robert William Wright as follows: 'I agree that each and all of the statements and answers contained in this application, consisting of parts I and II, are full, true, and complete in every respect, and are offered to said company as a consideration for a contract of insurance, which shall not take effect until the policy shall have been actually delivered to me and the first premium shall have been actually paid during my life and while I am in good health,' and it being admitted in this case that Robert William Wright had tuberculosis of the lungs at the time that the policy was delivered to him, you are instructed to return the following verdict: 'We, the jury, find for the plaintiff for the sum of $50.42, the amount deposited by the defendant in the registry of the court, and in all other respects find for the defendant.' "

[1] The appellee admitted, both in her pleadings and in the trial, that her husband was afflicted with tuberculosis of the lungs at the time the application was made and the policy of insurance issued thereon was delivered, and aside from such admissions the evidence conclusively established that such was the condition of the insured's health at those dates. But in the original opinion we held that the burden was upon the appellant to prove that within a reasonable time after learning that the assured had tuberculosis of the lungs at the time the policy was delivered it gave the assured, or his beneficiary, notice that it refused to be bound by the policy, and that since such

burden had not been discharged it became our duty to affirm the judgment of the district court regardless of the other questions in the case. This conclusion was based upon article 4948 of Vernon's Sayles' Texas Civil Statutes, which is quoted in our first opinion, and the appellant asserts now that the provisions of that statute are inapplicable to its defense that the policy sued on by its terms never took effect as a contract, because it was admitted by the appellee, in her pleadings and in open court at the trial, the assured was afflicted with tuberculosis of the lungs. Further consideration of the case has led us to the conclusion that this contention of the appellant is correct. The application and the policy contain the entire contract between the parties, and it is not only agreed in the application that all of the statements therein "are full, true, and complete," but it is stipulated therein, as above shown, that the policy of insurance applied for shall not take effect until the policy shall have been actually delivered to the insured and the first premium paid during his life and while he was in good health. The purpose and meaning of this provision, standing alone or taken in connection with any or all other provisions of the contract, is clear, without ambiguity, and not open to construction. It unquestionably means that the policy should not take effect as a contract of insurance unless actually delivered to the applicant therefor while he was in good health. This being the meaning of the provision, and the appellee having admitted in her pleadings and in open court at the trial that the applicant or insured was afflicted with tuberculosis of the lungs at the time the policy was delivered to him, and that such disease caused his death, the policy by its terms never became an obligation of the appellant.

Applications for policies of life insurance frequently provide, as in the present instance, that the policy shall not take effect unless it is delivered to the insured and the first premium paid while he is in good health, and the great weight of authority is to the effect that such provision is valid, and that if the insured was not in fact in good health on the date the policy was delivered the company is not liable. Gallant v. Metropolitan L. Ins. Co., 167 Mass. 79, 44 N. E. 1073; Murphy v. Metropolitan Life Ins. Co., 106 Minn. 112, 118 N. W. 355; Logan v. New York L. Insurance Co., 107 Wash. 253, 181 Pac. 906; Metropolitan L. Insurance Co. v. Willis, 37 Ind. App. 48, 76 N. E. 560; Gallop v. Royal Neighbors of America, 167 Mo. App. 85, 150 S. W. 1118; Metropolitan L. Insurance Co. v. Betz, 44 Tex. Civ. App. 557, 99 S. W. 1140; American Nat. Insurance Co. v. Anderson, 179 S. W. 66; Security Mut. L. Ins. Co. v. Calvert, 39 Tex. Civ. App. 382, 87 S. W. 889; Seaback v. Metropolitan L. Ins. Co., 274 Ill. 516, 113 N. E. 862; Mutual

L. Insurance Co. v. Willey, 133 Md. 665, 106 Atl. 163. It is also held that it is immaterial that the condition of the insured's health has changed since his application was made, or that he was ignorant of his condition. Carmichael v. Hancock Mut. Ins. Co., 116 App. Div. 291, 101 N. Y. Supp. 602; Metropolitan L. Ins. Co. v. Howle, 62 Ohio, 204, 56 N. E. 908; Id., 68 Ohio, 614, 68 N. E. 4; Oliver v. Mutual L. Ins. Co., 97 Va. 134, 33 S. E. 536; Packard v. Metropolitan L. Ins. Co., 72 N. H. 1, 54 Atl. 287.

This defense, as we now view it, is separate and distinct from the defense that misrepresentations were made in the application for the policy, and our conclusion is that the failure of the appellant to give notice to the insured or beneficiary, within a reasonable time after discovering that the insured had tuberculosis of the lungs, that it would not be bound by the contract of insurance, did not render unavailing the provision that unless the policy was delivered while the insured was in good health the contract should not take effect. Under article 4948 of the statute, it was necessary for the appellant, in order to avail itself of the defense based upon misrepresentations made in the application to secure the policy, to show that it gave the insured or beneficiary notice within a reasonable time after discovering the falsity of such representations that it would not be bound by the contract of insurance; but in order to sustain the first-mentioned defense, the same having been asserted within the contestable period, it was necessary only to show that the insured was not in good health when the policy was delivered. We do not agree with the contention to the effect that by pleading and proving that the first premium was paid and received when the application for the policy was made, which was a few days prior to the delivery of the policy, the appellee showed an express waiver of the provision in the application making the assumption of any liability on the part of appellant dependent upon the good health of the insured at the time the policy was delivered.

The provision, as before stated, is clear and unambiguous and susceptible of but one construction. By its plain and unmistakable terms the insured agrees that all the statements and answers contained in the application are full, true, and complete in every respect, and are offered to the insurance company as a consideration for a contract of insurance, which shall not take effect unless the policy shall have been actually delivered to him while he was in good health. Nor shall it take effect unless the first premium shall have been actually paid during his life and paid while he was in good health. In other words, if the insured was not in good health at the time the policy was delivered to him, or if he was dead or in bad health when the first premium was paid,

then, in either event, no obligation on the part of the insurance company was assumed, and, of course, there was no contract of insurance. It was as much a condition precedent to the taking effect of the contract that the first premium be paid during the life of the insured and while he was in good health as that the policy be delivered while he was in good health, and the fact that the premium was paid when the application was made, and a few days in advance of the delivery of the policy, can furnish no basis for the holding that thereby the other condition was abrogated or waived. We can see no good reason for saying that the provision relative to good health at the time of the payment of the first premium of the policy was inserted to cover cases "when the first premium was collected at a time subsequent to the issuance of the policy, either at or prior to the delivery thereof." The provision under consideration is not one which the insurance company may avail itself of to avoid an executed contract, or one which in the ordinary sense constitutes a warranty of the good health of the insured, but its effect was to prevent the taking effect of the contemplated contract, unless there was a compliance with the conditions precedent named therein. Differently stated, with such a provision in the application for the policy the contract is not a completed one, is not absolute but conditional, and in this case it is the fact of sound health, etc., in the insured on the date of the delivery of the policy that determines the liability of appellant.

The Kentucky cases holding that a condition in a life policy that it should not be binding upon the company unless on the date of its issuance the insured was in sound health applies only to the unsoundness of health arising after the application and medical examination, and that in such case the insurer must rely alone on the statements in the application to avoid a recovery, and is unavailing as a defense unless it is shown that the insured's disease developed between his application and the time when the policy was delivered, are unquestionably against the great weight of authority upon the question, and we are unwilling to follow them. The record of many of the cases which we have cited discloses that the insured before or at the time of the application for the insurance was not in good health, and that the application or policies involved in the suits contained provisions not so dissimilar to the one here in question as to render them inapplicable.

In the case of Insurance Co. v. Willis, supra, the Supreme Court of Illinois held that there could be no recovery under a policy providing that no obligation was thereby assumed unless on the date of the delivery the insured is alive and in sound health, where it was shown that the appli-

cant had tuberculosis at the time that the policy was delivered, although it was further shown he had been suffering from that disease long prior to the making of the application.

In Logan v. Insurance Co., supra, it was shown that the insured was not in sound health at the time of the making of the application nor at the time the policy was delivered, and the court held that, under the provision in the policy that it should not take effect unless delivered during the insured's lifetime and while he was in good health, the court should have directed a verdict for the insurance company.

Likewise, in Willey's Case, supra, where it was shown that the insured had tuberculosis for some months prior to the time he made application for insurance, the Court of Appeals of Maryland held that, since the policy contained a provision that it should be void if upon the date of actual delivery the insured was not alive and in good health, no recovery under the policy could be had. Decisions of various other states of similar import might be quoted, but, coming to adjudications of our courts, we find that in Metropolitan Life Ins. Co. v. Betz, supra, the policy sued on contained the provision:

"No obligation is assumed by the company until the first premium has been paid, nor prior to this date, nor unless upon the delivery of this policy the insured is alive and in sound health."

The application contained, over the signature of the applicant, the following clause:

"I further agree that the company shall incur no liability under this application until it has been received, approved, and the policy issued and delivered and the premium has actually been paid to and accepted by the company during my lifetime and while I am in good health."

There was evidence that the insured died from the effects of Bright's disease, and that he was afflicted with such disease prior to the date of his application and the medical examination made to secure the insurance. In holding that no recovery could be had upon the policy the court said:

"By the terms of the policy it was not to take effect as an obligation of the defendant unless the insured was in good health at the time of its delivery; and it being shown by the undisputed evidence that at that time the insured was afflicted with a mortal disease, which subsequently produced his death, the defendant incurred no liability upon the policy, and judgment should have been rendered in its favor."

In the case of American National Insurance Co. v. Anderson, 179 S. W. 66, the evidence showed, as in the instant case, that the insured had tuberculosis of the lungs prior to the time that he made application for the policy of insurance sued on and at the time the policy was delivered, and the court in that case held that if the fact that the insured was not in sound health at the time the policy was delivered had been pleaded, it would have been a good defense under the provision of the contract that the policy should not take effect unless the insured was in good health at the date of its delivery.

In Metropolitan Life Ins. Co. v. Howle, supra, the court said:

"The condition in the policy is that there shall be no obligation assumed by the company, unless upon the date of the policy the insured, the wife, shall be alive and in sound health. The matter of life and sound health is not made to depend upon her knowledge thereof, but upon the fact itself. She might be dead and not be conscious of it, and she might be in unsound health and not know it, but either would alike defeat a recovery."

So in Murphy's Case, supra, the court, among other things, said:

"It is the fact of the sound health of the insured which determines the liability of the defendant, not his apparent health, or his or any one's opinion or belief that he was in sound health."

If this is the correct view of the law, it is immaterial whether the insured did or did not know he had tuberculosis of the lungs at the time the policy was delivered to him; but we believe the evidence, as disclosed by the record, is such that reasonable minds cannot differ in the conclusion that the insured did know, at the time the policy sued on was delivered to him, that he had tuberculosis of the lungs. It follows from what we have said that the motion for a rehearing should be granted; that the judgment of the district court be reversed and judgment here rendered in favor of the appellee for only the sum of $50.42, the amount of premiums paid and tendered by the appellant and deposited in the registry of the court; and that all costs be taxed against the appellee.

## On Appellee's Motion for Rehearing.

In her motion for a rehearing the appellee asserts that our holding on the appellant's motion for rehearing, to the effect that since the application for the policy sued on, which was a part of the contract of insurance, stipulated that the policy should not take effect until the same was actually delivered to the insured and the first premium paid during his life and while he was in good health, and since it was admitted by the appellee and conclusively shown that the insured had tuberculosis of the lungs at the time the policy was delivered to him and the first premium paid, the policy ·by its terms never became an obligation of the appellant, is different from or in conflict with the decision in the cases of American National Life Insurance Co. v. Rowell, 175 S. W.

170, American National Insurance Co. v. Burnside, 175 S. W. 169, American National Life Insurance Co. v. Fawcett, 162 S. W. 10, National Fire Ins. Co. v. Carter, 199 S. W. 507, and Mecca Fire Insurance Co. v. Stricker, 136 S. W. 599.

The first three of the cases mentioned were decided by this court, the fourth by the Court of Civil Appeals for the First District, and the fifth by the Court of Civil Appeals for the Third District. Our conclusion is that neither of these cases is in conflict with the decision in the first case referred to and the present case, but it seems manifest, from a careful examination and analysis of the opinion in that case, that the court did not have in mind the precise question here involved, and did not there expressly pass on it. There it was urged that the trial court erred in overruling the insurance company's demurrers to Rowell's petition, because it was not alleged that the insured was in sound health at the time the policy sued on was issued, and this court held that there was no error in overruling the demurrers, since, if the insured was not, in fact, in sound health at that time, such fact was a matter of defense to be pleaded by the company. It was further there held that, while the defendant averred that the insured was not in sound health when the policy was issued, such defense was not sufficiently pleaded to justify the admission of testimony to establish it. The opinion also indicates that the insurance company in its pleadings and assignments of error treated the provision in the policy, that no obligation was assumed by it unless on the date of issuance the insured was in good health, as a representation or warranty, and that this court, discussing the matter as presented, after stating in substance the provisions of article 4948 of the statute said that the failure to give the notice prescribed in that statute absolutely barred the insurance company from defending an action on the policy because of alleged misrepresentations. We also declared that said statute applied to covenants of warranty as well as to statements in the application not made warranties by the contract, citing Mecca Fire Ins. Co. v. Stricker, supra.

We further said in that connection "that the purpose of its [the insurance company's] pleading on the subject was to charge that the insured was falsely represented to be in good health at the time the policy was issued is clearly apparent." The question, decided in the present case, which was squarely presented by the pleadings and assignments of error in the case, was not considered or intended to be decided in Rowell's Case. If, however, it must be said that it was in fact decided in Rowell's Case contrary to our decision in the present case, then the decision in Rowell's Case is hereby overruled. It is so manifest to our minds that neither of the other cases referred to by the appellee is in conflict with our holding in the present case that we deem it unnecessary to discuss them.

[2] It is also said that "the holding of this court that the effect of the provision in the application under consideration was to prevent the taking effect of the contemplated contract, unless there was a compliance with the conditions precedent named therein, is erroneous, in that such provision is prohibited by article 4742, subdivision 3, of the Revised Statutes of 1911, and said statute should be construed as prohibiting said provision," and the case of First Texas State Insurance Co. v. Smalley, 228 S. W. 550, is cited. This question is suggested for the first time in the motion for rehearing. We fail to perceive the applicability of this article of the statute or the case cited. There is no such prohibited provision in the contract of insurance in this case as is contemplated by the article of the statute in question, and as contained in the policy passed on by the Supreme Court in the case mentioned. The tender by the appellant of the amount of the premiums paid to it does not appear to have been made in virtue of any provision contained in the contract of insurance for a settlement for less than the amount insured on the face of the policy. Such a provision, it seems, was contained in the policy under consideration in the case of First Texas State Insurance Co. v. Smalley, supra, and the Supreme Court held in that case that the provision was in contravention of article 4742, Revised Statutes 1911.

Believing we have correctly disposed of the case, the appellee's motion for a rehearing is overruled.